## Case No. 6,429.

### HERSEY v. The NORTH AMERICA.

[6 Hunt, Mer. Mag. (1842) 174.]

District Court, D. Massachusetts.

COLLISION—LOOKOUT—DARKNESS.

[On a libel of a steamer for collision with libellant's sloop on the high seas, four persons on the steamer testified that they were keeping a sharp lookout, and, because of the excessive darkness, did not see the sloop until too late to avoid the collision. Held, on conflicting evidence as to the extent of the darkness, that the steamer should not be held in fault.]

[This was a libel in rem by Albert Hersey, owner of the sloop Quincy, against the steamer North America, for collision.]

SPRAGUE, District Judge. The collision took place on the night of the 21st of August, about 9 o'clock, near Half-Way Rock, off Cape Ann, between the steamer North America, bound from Boston to St. Johns, and the sloop Quincy, of Hingham, bound from Rockport (near Gloucester) to Boston. The libellants charge that the respondents were in fault and guilty of gross carelessness, while the respondents state that they did not see the sloop, by reason of the darkness, until within a minute and a half before they struck. The steamer, having her steam up, is to be taken to be a vessel sailing with a fair wind, and it is also to be taken that the sloop was not in fact seen in season to avoid her.

The first question is, was there a good lookout kept up on board the steamer? The evidence on this point comes from the captain, mate, and pilot of the steamer. The pilot states that he and the mate were stationed on the upper deck for the express purpose of keeping a good lookout, which they did. The pilot first saw the Quincy, and sprang into the wheel-house to assist the helmsman to avoid her. The mate's testimony concurs with that of the pilot. Two of the men also say that they were keeping a lookout on the lower deck of the steamer, but did not see the sloop until after they heard the pilot cry out. Here are four witnesses to the point that a good lookout was kept up on board the steamer, and they are uncontradicted. This point is thus far established. But it is urged by the libellants that the mere fact of the collision, under the circumstances, proves that a proper lookout was not kept up on board the steamer, as the night was a clear, starlit night, and the sloop could have been seen half a mile off. Was this the case? On this point the testimony was exceedingly contradictory. The captain of a vessel which sailed from Rockport about an hour before the Quincy testifies that the night was clear, and not thick or close, and those on board the Quincy state the same; while all on board the steamer concur in testifying the contrary. How can this evidence be reconciled? Two of those on board the sloop state that there was a heavy cloud along the horizon from southwest to northeast. The two vessels were sailing in opposite directions,—one rather towards the cloud, the other away from it,—and this may account for the difference of opinion as to the night. Be this as it may, it does not appear, on the whole, that the collision was the result of negligence, but of pure accident, and the libel must be dismissed. But, as the libellants do not seem to have been in fault in bringing it, let it be dismissed without costs.